Peter J. **BRENNAN, Secretary of Labor (Successor to James D. Hodgson), United States Department of Labor**

v.

**PADRE DRILLING COMPANY, INC., and Billings Oil Service, Inc.**

**Civ. A. No. 71–C–111.**

United States District Court, S. D. Texas, Corpus Christi Division.

May 2, 1973.

28. 326 F.Supp. at 810.

Robert A. Fitz, Asst. Regional Sol., Department of Labor, Dallas, Tex., for plaintiff.

Lev Hunt, Corpus Christi, Tex., for defendants.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This action was instituted by the Secretary of Labor, seeking to enjoin the Defendants from withholding payments of overtime compensation, under Section 17 of the Fair Labor Standards Act, 29 U.S.C. § 217. Plaintiffs charge that the Defendants are violating and have violated 29 U.S.C. §§ 207 and 215(a)(2). Jurisdiction is conferred upon the Court by 29 U.S.C. § 217.

At all relevant times, Defendants Padre Drilling Company, Inc., and Billings Oil Service, Inc., employed and are now employing a number of employees engaged in drilling activities related to the production of petroleum products, substantial portions of which products have been and are being shipped and transported in commerce to destinations outside the state in which such production of goods has occurred. The Defendants are Texas corporations, maintaining their principal offices in the City of Corpus Christi, Nueces County, Texas.

The Defendants are engaged in the business of drilling oil and gas wells. Each company owns two drilling rigs. These rigs are portable and moved from drilling location to drilling location in the South Texas area, from Fort Bend County, Texas, on the north, to Cameron County, Texas, on the south, and Wharton County on the east. The rigs are moved from and to various drilling sites, as directed by the oil companies. The nature of Defendants' drilling business is such that each drilling rig must be moved many times during the course of a year. The rigs remain at particular locations from three days to two weeks. Consequently, the locations where Defendants' employees work constantly change.

While drilling, each of the Defendants' four drilling rigs operates on a 24-hour basis, seven days a week. The three crews work the morning, day, and evening "tours," eight hours each. A crew normally works 56 hours during a seven-day week. A regular crew consists of one toolpusher, one driller, one derrickman, and one or two roughnecks.

Since it would be most unusual for a drilling location to be within walking distance of any employee's residence, it is necessary that the employees of Defendants drive to and from the location of the particular rig on which they are working at the time. In so traveling and sometimes remaining at the job site overnight, the employees incur travel and other expenses. Such expenses are incurred by each employee in the furtherance of his employer's interest.

In 1967, the Defendants reduced the wages paid to their drillers, derrickmen, floorhands and roughnecks, by a dollar

per hour, and started paying such employees one dollar per hour for travel expenses. Such expenses are gasoline, oil, and general depreciation on their automobiles, as well as lodging and food. The Defendants refer to this dollar per hour as a "per diem." The Defendants do not consider this dollar per hour as part of their employees' regular rate of compensation, and, therefore, do not pay overtime on the "per diem." In other words, no employee gets one and one-half times this dollar per hour for all the hours worked by him in excess of forty hours per week. The drillers, derrickmen and floorhands are not required to submit expense statements, but the toolpushers are.

The members of each crew normally commute to the drilling site in the automobile of a crew member. The crew members normally rotate driving the "car pool" so that one of the crew members drives his own car every fourth or fifth day to the job site. Occasionally, the Defendants' employees stay overnight or for several days at a time near the drilling site. On such occasion, they usually camp out or obtain lodging in the general vicinity. These employees receive a dollar per hour for traveling expenses, regardless of what the actual expense may be. It should be noted that all of the crew members who work on a particular rig are not necessarily residents of the same town or city; so, it is not always possible for the employees working on a particular rig to travel together.

It should be further noted that if computed on an annual basis at the rate of twelve cents per mile, for the first 15,000 miles traveled, and nine cents per mile thereafter, the Defendants' employees' car expenses would slightly exceed the dollar per hour "per diem." However, the computation ignores the fact that upon occasion four or five crew members will ride together and that, therefore, the actual miles driven are proportionately reduced. But, the sometimes cost of lodging and meals

must also be taken into account as travel expense. It seems reasonably clear to the Court that, generally speaking, the traveling expenses are about the same, or perhaps a little more, than the "per diem" dollar per hour.

There are factors in the oil well drilling business which prevent any exact computation of the actual traveling expenses or other expenses incurred by an employee in the furtherance of his employer's interest. Among these factors are the constantly changing locations of the drilling rigs, varying residences of the employees, and a very high rate of employee turnover. So, to require an employee to submit a detailed expense account, in addition to the added bookkeeping chores, is impractical. Consequently, there is and has been a custom among oil well drilling contractors in the South Texas area to pay a flat sum to their employees as reimbursement for traveling expenses incurred in the furtherance of the employer's interest. The amount of such flat sum varies from drilling contractor to drilling contractor, as does the name given the payment, such as "travel expenses," "travel allowance," "living expense," "per diem," and similar names. Regardless of the name given, the purpose of such payment is for the reimbursement of expenses incurred by the employee.

The sole issue presented here is whether the one dollar per hour "per diem" paid by the Defendants to their employees should be included in the regular rate for the purpose of computing overtime compensation under 29 U.S.C. § 207. Subdivision (e) of said Section 207 provides:

"As used in this section, the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include

. . .

\*    \*    \*    \*    \*    \*

"(2) . . . reasonable payments for traveling expenses, or

other expenses incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment;
. . . ."

An administrative interpretation of the quoted portion of this statute is found at 29 Code of Federal Regulations, Sec. 778.217, subsection (a), and provides, generally, that expenses incurred by an employee on the employer's behalf are not included in the regular rate. Subsection (b)(3) allows actual or reasonably approximate amounts expended by an employee traveling "over the road" and living expenses. Subsection (b)(5) provides,

"Actual or reasonably approximate amounts expended by an employee is temporary excess home-to-work travel

"(i) because the employer moved the plant before the employee relocated, or

"(ii) because the employee on a particular occasion is required to report for work at a place other than his regular work place."

There is really no dispute as to the facts under which these Defendants operate. Each Defendant pays a dollar per hour per diem, and the total amount of such per diem depends upon how many hours per day the employee works. The Court finds that the one dollar per hour per diem, when paid for a regular working day of eight hours, is an amount reasonably approximate to the amount expended by the employee in the furtherance of his employer's interest and properly reimbursable by the employer; but, since the employers here each paid its employees on the basis of one dollar per hour, the exclusion may not apply. The so-called "per diem" payments made by said Defendants to their employees appear to be closely related to the number of hours worked. The evidence here shows that a large number of the employees of Defendant

Padre Drilling Company (figures being unavailable at this time from the Defendant Billings Oil Service) worked significant amounts of overtime hours during the period in question here. Some of these employees worked in excess of 1,200 overtime hours during the two-year time span, while most of the other employees who worked overtime hours worked substantially less than that. It seems to the Court there would be some material relationship between the overtime hours worked and the expenses incurred by employees in living away from home, particularly if the overtime work is the reason for staying away from home overnight. But, more relevant, is lack of testimony that the employees worked more than eight hours a day. The overtime hours just referred to resulted from the eight hours a day for seven days each week of the work schedule followed in Defendants' operations.

The language of the Fair Labor Standards Act quoted above exempts from the regular rate at which an employee is paid, "payments . . . which are not made as compensation for his hours of employment." The Court interprets this to mean that remuneration for expenses incurred by an employee in the furtherance of his employer's interest, which are properly reimbursable, should have no relationship to the number of hours worked in a day. And, this is the case even though there may be a material relationship between overtime work and away-from-home expenses. The Court would agree with the Defendants that the amount of $8.00 a day (disregarding the problem of overtime) is reasonably related to an amount which would ordinarily be expended by an employee for expenses and thus properly reimbursable by the employer. It is not unreasonable to say, if we can disregard semantics, that these Defendant employers are paying a per diem which is, in effect, $8.00 per day.

There are several reasons which mitigate in favor of these Defendant employers in this instance. Here, the De-

fendants relied upon opinions of the Wage and Hour Administrator, Clarence P. Lundquist, prepared in October 24, 1963, and December 11, 1964. The 1963 opinion discusses payment of a ten dollar a day travel and expense allowance, paid to employees who worked on a drilling rig and drove their cars to the rig location. After discussing the statute and the regulations applicable, the Administrator said,

"According to the facts you have presented, it would appear that the employees' travel from their homes to the drilling rig and from the rig to their homes is normal home-to-work travel and, therefore, not working time, even though the employees are reimbursed for their travel expenses. Time spent driving to and from work in the driving pool would not constitute hours worked for the drivers or the riders.

"To the extent that payments for travel expenses reasonably approximate actual expenses, they may be excluded from the regular rate of pay. Any excess amount, however, must be included in the regular rate."

The 1964 opinion by Administrator Lundquist, found at B & A Labor Relations Reporter, W.H.M. 94:1105, considers payments made to employees of the Atomic Energy Commission, Nevada Test Site. Those employees had to travel round-trip distances of 130 to 200 miles between their homes and their regular work site. Payments were made to these employees "of lump-sum subsistance, location, and travel allowance of $5.00 or more per day." The Administrator approved of the practice under the circumstances presented because the employees regularly incurred traveling and other expenses in furtherance of their employer's interests. The Administrator went on to add, in effect, that the reasonableness of the payments would not be questioned unless it appeared the *amounts paid were not a reasonable* approximation of the employees' expenses.

Further, while it may not be sufficient standing alone, the Defendants here relied upon the advice of their attorneys in instituting the policy of paying their employees a per diem of one dollar per hour for each eight-hour shift. Also, the Defendants here, in reimbursing their employees for travel and other expenses incurred in having to travel to and from the job site, followed the customary practices in the oil drilling industry. Moreover, while the label applied to expense payments to employees and the method of computing varies as between drilling contractors, the amount of $8.00 per day paid by the Defendants comports with amounts paid by other drilling contractors to their employees, and, as earlier expressed, the amount of $8.00 a day appears to be reasonable under the circumstances. While the payment of $8.00 per day might not reasonably approximate the amount of expense incurred by some employees when the rig location was close to their homes, the evidence produced at trial tended to show that the payment of $8.-00 per day was a reasonable approximation of the travel and other expenses incurred by the employee over a period of time, and in traveling varying distances to different rig locations.

■ The Court is concerned that the combination of a dollar per hour reduction in wages and the dollar per hour payment labeled "per diem" is enough to sustain a conclusion that the Defendants have and continue to violate Sections 7 and 15(a)(2) of the Fair Labor Standards Act, 29 U.S.C., §§ 207 and 215(a)(2). However, the other circumstances recited by the Court are such that it is reluctant to conclude the method chosen by the Defendants, Padre Drilling Company and Billings Oil Service, to compute reimbursable expenses incurred by the employees is not within the exclusion from regular rate provided in 29 U.S.C. § 207(e)(2). Regardless of the unfortunate use of the term "dollar per hour," the actual facts establish a per diem of $8.00 per day, seven days a week.

It is, therefore, ordered that Plaintiff, James D. Hodgson, Secretary of Labor, United States Department of Labor, take nothing against Defendant Padre Drilling Company, Inc., and Defendant Billings Oil Service, Inc., and that the injunctions sought herein by Plaintiff be, and they are hereby, denied.